**SO ORDERED.**

**SIGNED this 4 day of June, 2013.**

_____

**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:

**MICHAEL WAYNE JOHNSON,**

    DEBTOR.

CASE NO. 12–00642–8–JRL

CHAPTER 7

**ALGERNON L. BULTER, III, CHAPTER 7 TRUSTEE,**

    PLAINTIFF,

    v.

**MICHAEL WAYNE JOHNSON,**

    DEFENDANT.

ADVERSARY PROCEEDING NO. 12–00240–8–JRL

## ORDER

This matter came before the court on the motion for summary judgment filed by Algernon L. Bulter, III ("trustee") in the above–captioned adversary proceeding, which is opposed by Michael

1

Wayne Johnson ("defendant" or "debtor").[1]  Also before the court is the trustee's motion seeking an order declaring the requests for admission, previously served upon the defendant on February 7, 2013, be deemed admitted for purposes of his motion for summary judgment.  A hearing was held on May 22, 2013 in Wilmington, North Carolina.

## BACKGROUND

The defendant, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 26, 2012.  The debtor is a fifty–two year old male, whose learning difficulties, psychological disorders and lack of formal education have left him illiterate.  In addition to his inability to read and write, the defendant suffers from Rheumatoid arthritis, which covers approximately 95% of his body.  Despite these challenges, the defendant has survived by relying on public and government assistance as well as income he received from his small house painting business, Professional Painting & Roofing Recoating.

Accompanying the defendant's petition were his schedules and statement of financial affairs, all of which were prepared by Glenda Ocasio ("Ocasio"), who operated a company called Legal Aid Alternatives in Owlet, Texas.[2]  Ocasio, an experienced bankruptcy paralegal, mailed the petition,

---

[1] The defendant, who is the above–referenced debtor, appeared pro se.

[2] Legal Aid Alternatives is a national document preparation company that markets itself as providing those individuals who fail to qualify for legal aid with an affordable alternative to retaining an attorney.  The disclaimer on their website reads as follows:

*Legal Alternatives is not a law firm. It is a National Document Preparation Company. None of its customer service representatives with whom you may speak over the telephone are attorneys. Because we are not a law firm or attorneys, we cannot and will not provide you with any legal advice. The information provided on this web site or by any of our customer service representatives over the telephone or by email is not legal advice and is not intended as legal advice. No attorney-client or confidential relationship exists or will be formed between you and Legal*

2

schedules and statement of financial affairs she prepared to the debtor for his signature and filing. The defendant's illiteracy, however, left him unable to ascertain the portions of the petition, schedules and statement of financial affairs requiring his signature. Without reading the documents, explaining their significance or informing the defendant that he was signing them under penalty of perjury as to their accuracy, Ocasio spelled out "debtor" and suggested he sign his name on the signature lines adjacent to where that word appeared. Without reading or having any knowledge of their contents, the defendant signed his petition, schedules and statement of financial affairs and filed them with the court.

The defendant's Schedule B, which was prepared by Ocasio and filed along with his petition, listed the following items of personal property: (1) $25.00 in cash; (2) $125.00 in a checking account with State Employees' Credit Union; (3) $2,500.00 in household goods and furnishings, including a television, sofa, coffee table, two recliners, bedroom set and kitchen appliances; (4) $800.00 in wearing apparel, which included pants, shirts, jackets, shoes, boots and underwear; and (5) a 1999 E150 Ford Econoline Van, 2010 Camaro SS and a trailer collectively valued at $25,600.00.

The defendant's statement of financial affairs, indicates that the he received $9,150.00 in income from self–employment in 2010 and received disability benefits of $868.00 and $10,416.00 in 2012 and 2011, respectively. The statement of financial affairs also indicates that the defendant did not transfer any property within the two years immediately proceeding the petition date.

After his appointment and during administration of the case, the trustee discovered that the defendant's schedules and statement of financial affairs were riddled with numerous inconsistencies,

---

*Alternatives.*

(emphasis in original).

inaccuracies and non–disclosures. The defendant, in his statement of financial affairs, failed to disclose the prepetition transfer of title to his 1947 Dodge Club Coupe ("Dodge Club Coupe") to his brother, Donald Ray Johnson, Jr. However, the defendant maintained possession and control of the Dodge Club Coupe following the transaction. This transfer took place on December 16, 2011, and causes Paragraph 10 of the defendant's statement of financial affairs, indicating that he did not transfer, either absolutely or as security, any property within the two years immediately proceeding the commencement of his case, to be false. The defendant also failed to disclose his ownership of the Dodge Club Coupe in his Schedule B.

In addition to the Dodge Club Coupe, the defendant's Schedule B failed to disclose ownership of several other assets, including a 1998 Ford E250 Van ("Ford E250 Van") and equipment used in connection with this home painting business, including a ladder, scaffolding (walk boards and hand rails), pressure washers, compressors, a table saw, safety belts, grinders, routers and other tools (collectively "painting equipment"). Schedule B also failed to list a debt, totaling approximately $6,000.00, owed to him by Tommy Phillips ("Phillips").

With the assistance of counsel, the defendant filed amended petition, schedules and statement of financial affairs on August 15, 2012. Amended Schedule B lists the defendant's equitable interest in the Dodge Club Coupe and his ownership of the Ford E250 Van, the painting equipment and the $6,000.00 owed by Phillips, which he believes is not collectable. In addition to listing the previously undisclosed property, the amended schedules made substantial amendments to Schedules A, B, C, D, E, F, I and J. The defendant's amended statement of financial affairs disclosed the prepetition transfer of the Dodge Club Coupe and cataloged the gross income he received from employment, operation of a business and other sources (disability benefits, rental income and

4

government assistance) during the two years immediately preceding the commencement of the case.

On September 20, 2012, the trustee filed a multi–count complaint initiating this adversary proceeding against the defendant, seeking denial of his discharge on three separate grounds pursuant to § 727(a) of the Bankruptcy Code.[3]  First, the trustee asserts that the defendant, with the intent to hinder, delay and/or defraud his creditors and the trustee, failed to disclose and concealed the prepetition transfer of the Dodge Club Coupe to his brother in violation of § 727(a)(2). The second claim for relief, asserts that the defendant's discharge should be denied under § 727(a)(4)(A) for his failure to disclose ownership of certain property, including the Dodge Club Coupe, Ford E250 Van, painting equipment, income received between 2010 and 2012, and the $6,000.00 owed to him by Phillips in his schedules or statement of financial affairs . The third claim for relief, based on § 727(a)(3), alleges that the defendant concealed, destroyed, mutilated, falsified or failed to keep or preserve information or records from which his financial condition may be ascertained. On October 22, 2012, counsel for the defendant filed a limited response to the trustee's complaint ("limited response").[4]  The limited response reveals that although the defendant signed his schedules and statement of financial affairs, he could not read or understand them nor were the consequences of his signature explained to him. The defendant also acknowledges that his schedules and statement of financial affairs were plagued with the inaccuracies and omissions alleged by the trustee in his

---

[3]All section references, unless otherwise indicated, are to the Bankruptcy Code, Title 11 of the United States Code.

[4]Due to the fee arrangement reached between the defendant and his counsel, the representation of the latter did not encompass this adversary proceeding filed by the trustee. The limited response states that it was filed to prevent entry of default against the defendant and urge the court to set the matter for hearing. Contemporaneously with the submission of the limited response, counsel requested leave to withdraw from further representation of the debtor. An order allowing counsel's request to withdraw was entered on November 21, 2012.

5

complaint; however, they were due to his inability to read and unawareness of the disclosure requirements imposed by the Bankruptcy Code and that the items had not been disclosed.

On February 7, 2013, the trustee served the defendant, via certified mail return receipt requested and facsimile, with first requests for admission, first set of interrogatories and first set of requests for production of documents (collectively "written discovery"). The return receipt indicates that the written discovery was received by the defendant on February 11, 2013.

On April 18, 2013, the trustee filed the motion for summary judgment currently before the court, arguing that there are no genuine issues of material fact precluding entry of judgment in his favor against the defendant on the first and second claims for relief in the complaint. With the assistance of an acquaintance, the defendant filed a sixteen–page handwritten response to the trustee's motion for summary judgment on May 2, 2013. In the response, the defendant provided evidence, which included that previously offered in the limited response, to refute the evidence offered by the trustee.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, states that summary judgment may be allowed "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, all conflicts are resolved by

viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When ruling on a motion for summary judgment, a trial judge has an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

## DISCUSSION

To facilitate one of the central tenants of the Bankruptcy Code, § 727 grants debtors a discharge providing them "a fresh start unhampered by the pressure and discouragement of [their] preexisting debt." Wachovia Bank, N.A. v. Voccia (In re Voccia), 477 B.R. 625, 631 (Bankr. E.D. Va. 2011) (citing Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994)). Section 727(a), listing the exceptions to discharge, provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (2) the debtor, with the intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>
>> (B) property of the estate, after the date of the filing of the petition;
>
> . . .
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
>> (A) made a false oath or account;
>>
>> (B) presented or used a false claim;

>   (C) gave, offered, received, or attempted to obtain money, property, or advantage, or promise of money, property, or advantage, for acting or forbearing to act; or
>
>   (D) withheld from an officer of the estate entitled to possession under this title any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

11 U.S.C. § 727(a)(2), (a)(4).   Exceptions to discharge, which are construed liberally in favor of debtors, "prohibit a discharge for those who play fast and loose with their assets or with the reality of their affairs." Voccia, 477 B.R. at 632 (citations and internal quotation marks omitted).  To prevail under § 727(a)(2), the trustee "must prove that the debtor acted with the intent to hinder, delay or defraud a creditor;" likewise, "a successful objection under § 727(a)(4) requires proof that the debtor acted knowingly and fraudulently." Bulter v. Ingle (In re Ingle), 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987); Voccia, 477 B.R. at 633 (recognizing that the exceptions to discharge under 727(a)(2) and 727(a)(4) "go hand in hand because a debtor who fraudulently conceals assets in the petition has also necessarily made a false oath by signing the petition."). Courts may, in the absence of an admission by the debtor, "infer from circumstantial evidence, including a pattern of concealment and non–disclosure, that the debtor acted with the necessary intent." Ingle, 70 B.R. at 983.

"Section 727(a)(2) serves to deny a discharge when the debtor attempts to prevent the collection of his debts by concealing or disposing of assets." Voccia, 477 B.R. at 632 (citation and internal quotation marks omitted).  To prevail, a trustee "must establish [by a preponderance of the evidence] that the debtor (1) transferred or concealed, (2) his property, (3) with the intent to hinder, delay or defraud a creditor, (4) within one year before filing the petition." Saslow v. Michael (In re

8

Michael), 452 B.R. 908, 919 (Bankr. M.D.N.C. 2011) (citations omitted). The trustee's prima facie case, once established, may be rebutted by the debtor "provid[ing] satisfactory, explanatory evidence." Id. (citing Farouki, 14 F.3d at 249).

Under § 727(a)(4)(A), the party objecting to discharge has the burden of proving the following by a preponderance of the evidence: "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." Warren v. Moore (In re Moore), Adv. No. 11–00294, 2012 WL 3564168, at *3 (Bankr. E.D.N.C. Aug. 17, 2012) (quoting Butler v. Schoonmaker (In re Schoonmaker), Adv. Pro. No. 04–00079–8–AP, at *3 (Bankr. E.D.N.C. May 25, 2006)); see Ingle, 70 B.R. at 983 ("The purpose of this section is to insure that debtors provide reliable information to those with an interest in the administration of the debtor's [sic] estate."). For a discharge to be denied under this provision, "the debtor [or defendant] must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007) (citation omitted); Michael, 452 B.R. at 919 ("The requisite intent to deceive exists where a debtor, in the first instance of filing a petition, schedules, or statement of financial affairs, makes statements—excluding honest mistakes—that are inconsistent or incompatible with his own knowledge and information." (citations omitted)); 6 Collier on Bankruptcy ¶ 727.04[2] (emphasizing that items or property "omitted by mistake . . . will not be deemed willfully false . . . ."(citations omitted)).

The trustee, in support of his allegation that the defendant made the misstatements and omissions at issue with the intent to hinder, delay or defraud and knowingly made material false

statements with the intent to deceive, cites the pattern of material omissions made by the defendant in his schedules and statement of financial affairs as well as his failure to respond to any of the trustee's requests for admission. Pursuant to Fed. R. Civ. P. 36 and Fed. R. Bankr. P. 7036, the trustee seeks an order declaring these requests for admission be deemed admitted and, therefore, conclusively established for purposes of this proceeding.[5]

In support of his motion for summary judgment, the trustee also relies heavily on Ingle. The facts of the instant case, however, are distinguishable from those in Ingle. The debtor in Ingle concealed certain prepetition transfers of real and personal property, by failing to disclose these transfers in his statement of financial affairs and list other property he owned in his schedules, including a sixteen–foot boat and numerous items he removed from his jewelry store. 70 B.R. at 891–92. In sustaining the trustee's objection to the discharge of the debtor, the court in Ingle held "that the debtor's failure to list the sixteen foot boat he owned on his schedule of assets constitute[d] a fraudulent concealment of property under section 727(a)(2) and a knowing and fraudulent false oath under section 727(a)(4)." Id. at 983 (emphasizing that "[t]he debtor's failure to verify the ownership of a substantial asset such as the boat constitutes such a reckless indifference to the truth so as to satisfy the fraudulent intent requirements of § 727(a)(2) and (4)."). In arriving at this conclusion, the court indicated that where "a debtor is uncertain as to whether certain assets are legally required to be included in his petition, it is his duty to disclose the assets so that the question may be resolved." Id. (citation omitted). The court also denied the debtor's discharge due to his deliberate non–disclosure of the proceeds he received from prepetition sale of real property and

---

[5]By virtue of the defendant's failure to respond, the trustee argues that the requests for admission undisputedly establish the requisite elements of § 727(a)(2) and § 727(a)(4)(A).

unexplained failure to schedule items removed from his jewelry store prior to the commencement of the case. See id. at 983–84 (viewing "the pattern of non–disclosure displayed by the debtor . . . [compels] the court [to] conclude[] that the debtor acted knowingly and with the intent to defraud creditors in failing to list these items.").

Contrary to the debtor in Ingle, the pattern of misstatements and omissions present in the defendant's schedules and statement of financial affairs is attributable, at least in part, to his illiteracy. Cf. id. at 983–84 ("Although the debtor testified generally that he was acting under the advice of counsel, he did not rely on that defense with respect to his failure to list the boat."); see McDow v. Carbaugh (In re Carbaugh), 453 B.R. 638, 644–45 (Bankr. W.D. Va. 2011) (considering the debtor's background, intelligence, level of education, and occupational knowledge in determining whether he possessed the requisite intent to defraud or exercised reckless indifference for the truth). In Carbaugh, the court held that the debtor's failure to fully disclose all of his farming equipment and hay on his amended schedules was sufficient to deny his discharge under § 727(a)(4). Id. at 645 (determining that the debtor failed to rebut the presumption of intent to hinder, delay or defraud because he could not hide behind ignorance of the law or claim an unawareness of the extent of his property). In rejecting the contention that the omissions were attributable to mere oversight, the court found it "inconceivable" that the debtor, a third generation farmer holding a four–year degree in religion from Shenandoah University, "would simply forget a large number of items that he uses in his farming operation, the very same farming operation that has been his sole livelihood for many years." Id. at 644–45.

Considering the circumstances of the instant case, the court finds that there is a genuine issue of material fact as to whether the defendant's failure to disclose the prepetition transfer,

understatement of his income, and omission of the non–disclosed assets in his schedules and statement of financial affairs violated § 727(a)(2) and § 727(a)(4)(A). Therefore, the trustee is not entitled to judgment as a matter of law. The evidence in the instant case suggests that the defendant's illiteracy provides a sufficient explanation for the numerous misstatements and omissions present in his schedules and statement of financial affairs to which he attested. Cf. First Fed. Savings & Loan Ass'n of Raleigh v. Johnson (In re Johnson), 82 B.R. 801, 806–07 (Bankr. E.D.N.C. 1988); see Zangen v. Glickman (In re Glickman), 64 B.R. 616, (Bankr. S.D. Fla. 1986) (suggesting, in dicta, that omissions or incomplete responses to highly technical inquiries in a statement of financial affairs by "sick, senile or uneducated" debtors are not indicative of fraudulent intent). In addition to his illiteracy, the defendant was misguided by Ocasio who supplied him with the uninformed and erroneously held belief that the schedules and statement of financial affairs were accurate, complete and prepared in accordance with the Bankruptcy Code. It is therefore conceivable that the defendant's illiteracy prevented him from having the ability to ascertain whether the prepetition transfer and property had been disclosed in his schedules and statement of financial affairs. See Carbaugh, 453 B.R. at 644–45.

Although several courts have found reckless indifference where a debtor signs false documents without examining them,[6] the record in the instant case does not indicate, as a matter of

---

[6] Several circuits, including the Fourth Circuit, have found debtors to be recklessly indifferent where they signed false documents without examining them. See, e.g., Gardner v. Am. Century Mortg. Investors, 577 F.2d 928, 929 (5th Cir. 1978); In re Santos, 211 F.2d 887, 889 (7th Cir. 1954); David v. Annapolis Banking & Trust Co., 209 F.2d 343, 344 (4th Cir. 1953); In re Savarese, 209 F. 830, 832 (2nd Cir. 1913). These courts refused, despite the debtors' lack of actual knowledge, "to discharge the debts because the debtors had no reason, good or bad, for their lack of knowledge." Callaway Bank v. Asbury (In re Asbury), Adv. No. 09–02012, 2011 WL 44911, at *5 (Bankr. W.D. Mo. Jan. 6, 2011) (distinguishing these cases from the situation where a debtor abstains from all responsibility of his affairs by failing to pay

law, that the defendant possessed the requisite knowledge and intent to defraud to warrant denial of his discharge under § 727(a)(2) and § 727(a)(4)(A). The subsequent disclosure of the prepetition transfer and property in question in the amended schedules and statement of financial affairs does not excuse the original omission, Ingle, 70 B.R. at 984; however, the it is evidence that the misstatements and omissions were not willful or deliberate. See, e.g., In re Hughes, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006) (finding that the debtor's failure to correct errors and omissions in schedules was "the essence of a reckless disregard for the truth"); In re Beauchamp, 236 B.R. 727, 733 (9th Cir. B.A.P. 1999) ("The fact of prompt correction may be evidence of probative of lack of fraudulent intent."). Counsel the defendant retained postpetition filed amendments and supplements addressing the misstatements and omissions present in the defendant's original petition, schedules and statement of financial affairs. This prompt amendment is further evidence demonstrating a genuine issue of material fact regarding whether the defendant's misstatements and omissions were fraudulent under § 727(a)(2) and knowingly fraudulent false oaths pursuant to § 727(a)(4)(A). See Beauchamp, 236 B.R. at 733.

## CONCLUSION

Based on the foregoing, the trustee's motion for summary judgment is **DENIED.**[7]

**END OF DOCUMENT**

---

minimal attention to certain important documents prepared by his agent).

[7]The trustee's request that the requests for admission be deemed admitted for purposes of this proceeding is also **DENIED** based on the same rationales supporting the court's denial of the trustee's motion for summary judgment.